IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| AURINIA PHARMACEUTICALS INC., and AURINIA PHARMA U.S., INC.,<br><br>                    *Plaintiffs*,<br><br>    v.<br><br>GEORGE F. TIDMARSH,<br><br>                    *Defendant*. | Civil Action No. 8:25-cv-3593 |

**DECLARATION OF JOSEPH P. GALDA IN SUPPORT OF
DEFENDANT GEORGE F. TIDMARSH'S MOTION TO SUBSTITUTE
THE UNITED STATES AS DEFENDANT PURSUANT TO 28 U.S.C. § 2679**

I, Joseph P. Galda, declare:

      1.      I am over the age of eighteen and competent to testify to the matters set forth herein. I am a corporate finance and securities attorney and the sole owner of a boutique securities law firm. The facts stated in this declaration are based on my personal knowledge, except where stated otherwise, and are true and correct to the best of my knowledge.

      2.      I have served for approximately five years as corporate counsel to Defendant George F. Tidmarsh, advising him in connection with various investment and transactional matters.

      3.      I first met Dr. Tidmarsh at the inception of Revelation Biosciences, Inc., at which time my firm was engaged to serve as corporate and securities counsel to the company.

      4.      Among the many transactions in which I served as Dr. Tidmarsh's attorney, I represented Dr. Tidmarsh with respect to with his investment in Lowell Therapeutics, Inc.

1

("LTX"). In connection with that investment, I was asked to form a single-member limited liability company known as GNAT, LLC (the "LLC").

5. Dr. Tidmarsh was the sole member of the LLC, and I was, and remain, the manager of the LLC, with sole voting authority and investment discretion over the assets of the LLC.

6. On or about July 16, 2025, Dr. Tidmarsh telephoned me to inform me of his proposed appointment to the United States Food and Drug Administration ("FDA") as Director of the Center for Drug Evaluation and Research.

7. In connection with this appointment, and pursuant to applicable federal ethics and conflict-of-interest requirements, Dr. Tidmarsh was required to divest his interests in pharmaceutical and biotechnology companies.

8. Dr. Tidmarsh held interests in several privately held companies for which no public market existed. To comply with these requirements, he transferred those interests to the LLC and transferred his membership interest in the LLC to his sister, Elizabeth Hickey ("Hickey"), to be held for the benefit of his three sons. The LLC was renamed Virello Group, LLC.

9. Among the assets transferred to the LLC was a contractual right to receive deferred compensation for consulting services previously provided by Dr. Tidmarsh to American Laboratories, Inc. ("ALI") pursuant to an agreement (the "ALI Agreement").

10. The ALI Agreement required ALI's consent to any assignment. I communicated with Kevin Tang ("Tang"), who was then the Chief Executive Officer of ALI, to request such consent, and ALI granted the requested consent.

11. On or about August 27, 2025, I received an email from Dr. Tidmarsh's sister, Hickey, requesting that I seek an extension of the ALI Agreement's term.

12. I was informed that ALI had received notice from the FDA that would require ALI to suspend operations for a period of time, and that the extension was requested to preserve the economic value of the ALI Agreement to the LLC during any such suspension.

13. On August 28, 2025, I emailed Tang requesting an extension of the ALI Agreement. Dkt. 1-12.

14. On September 4, 2025, I received an email from Tang asking what "George can help with" in exchange for the requested extension. Dkt. 1-13.

15. I understood Tang's September 4, 2025, email to suggest that Tang wanted Dr. Tidmarsh to intervene on Tang and his companies' behalf in his official capacity with the FDA. I did not respond to this email.

16. On October 8, 2025, Tang emailed me requesting a telephone call. Tang and I spoke by telephone on October 9, 2025.

17. During that call, Tang stated that he wanted to meet with Dr. Tidmarsh. Although Tang did not specify the subject of the proposed meeting, he stated that the FDA action affecting ALI was a "life and death" matter for ALI and that, absent a favorable resolution of the FDA action, ALI would be required to lay off more than fifty employees.

18. In that call Tang made it clear that he was seeking Dr. Tidmarsh's assistance with the ALI/FDA matter. I advised Tang that Dr. Tidmarsh was ethically prohibited from intervening in FDA matters involving ALI.

19. Despite this, Tang insisted that I attempt to arrange a meeting between Tang and Dr. Tidmarsh. He stated that he was willing to travel anywhere and meet at any time that was convenient to Dr. Tidmarsh.

20. I conveyed Tang's request to Dr. Tidmarsh. In response, Dr. Tidmarsh instructed me to advise Tang that any communication by Tang to him should be directed through his official FDA email address.

21. On October 31, 2025, I sent an email to Tang making clear that Dr. Tidmarsh was not in a position to assist with FDA matters and that, if Tang was suggesting an improper *quid pro quo* or bribe, such conduct would be reported to the appropriate authorities.

22. I sent this email after Dr. Tidmarsh informed me that Tang had lodged a complaint with the FDA's Office of the General Counsel alleging impropriety by Dr. Tidmarsh. My October 31, 2025, email was intended to clarify the record and to reject any implication by Tang that Dr. Tidmarsh had suggested or agreed to provide assistance to Tang in exchange for contractual or other concessions.

23. At no time did Dr. Tidmarsh request that I seek, offer, or convey any intervention with the FDA on his behalf or on behalf of any third party.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on December 16, 2025, in Broomall, Pennsylvania.

*/s/ Joseph P. Galda\**

Joseph P. Galda

*A copy of the signature page bearing an original signature is attached hereto

20. I conveyed Tang's request to Dr. Tidmarsh. In response, Dr. Tidmarsh instructed me to advise Tang that any communication by Tang to him should be directed through his official FDA email address.

21. On October 31, 2025, I sent an email to Tang making clear that Dr. Tidmarsh was not in a position to assist with FDA matters and that, if Tang was suggesting an improper *quid pro quo* or bribe, such conduct would be reported to the appropriate authorities.

22. I sent this email after Dr. Tidmarsh informed me that Tang had lodged a complaint with the FDA's Office of the General Counsel alleging impropriety by Dr. Tidmarsh. My October 31, 2025, email was intended to clarify the record and to reject any implication by Tang that Dr. Tidmarsh had suggested or agreed to provide assistance to Tang in exchange for contractual or other concessions.

23. At no time did Dr. Tidmarsh request that I seek, offer, or convey any intervention with the FDA on his behalf or on behalf of any third party.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on December 16, 2025, in Broomall, Pennsylania.

_____
Joseph P. Galda